UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RAYMOND HENDERSON,

Plaintiff,

-vs-                                                07-CV-0487C

DAVID GLENN HEFFLER and
TIMOTHY JONES,

Defendants.

_____

APPEARANCES:    DAVID J. SEEGER, ESQ., Buffalo, New York, Attorney for Plaintiff.

FELDMAN KIEFFER LLP (STEPHEN A. MANUELE, ESQ., of Counsel), Buffalo, New York, Attorneys for Defendant Heffler.

CHERYL A. GREEN, ERIE COUNTY ATTORNEY (JEANNINE M. PURTELL, Assistant Erie County Attorney, of Counsel), Buffalo, New York, Attorneys for Defendant Jones.

**BACKGROUND**

Plaintiff commenced this action with the filing of a complaint on July 27, 2007 (Item 1).  He has alleged two causes of action against both defendants:  pursuant to Title 42 U.S.C. § 1983 for the deprivation of due process, and a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  He has also alleged two claims against defendant Heffler only:  the violation of New York General Business Law § 350-b and common law fraud.  On August 15, 2007, defendant Jones filed a motion to dismiss the complaint or to stay the action on the authority of *Younger v. Harris*, 401 U.S. 37 (1971) (Item 5).  In a Memorandum and Opinion filed July 24, 2008, the motion was denied (Item 12).

Defendant Heffler filed an answer to the complaint on August 20, 2007 (Item 6), and defendant Jones filed an answer on December 19, 2008 (Item 17). On September 30, 2009, plaintiff filed a motion to compel answers to interrogatories (Item 41). Heffler filed a response to the motion to compel on October 6, 2009 (Item 43). The parties were directed to confer in an attempt to resolve any outstanding discovery disputes (Item 53). On November 3, 2009, the court allowed defendant Heffler the opportunity to file an amended answer, which was filed on November 5, 2009 (Item 45).

On January 5, 2010, defendant Heffler filed a motion for summary judgment (Item 50). Defendant Jones filed a motion for summary judgment on February 11, 2010 (Item 56). In an order filed May 7, 2010, the court directed plaintiff to file a response to the motions and to advise the court if there were any outstanding discovery disputes. Plaintiff was advised that if he did not so advise the court by May 21, 2010, the motion to compel would be dismissed as moot (Item 67). Plaintiff filed a response in opposition to the motions for summary judgment on May 12, 2010 (Item 68). Defendant Jones filed an affirmation in reply (Item 69), and defendant Heffler filed a reply memorandum (Item 71). Plaintiff did not advise the court that any further action should be taken on the plaintiff's motion to compel, and that motion (Item 41) is therefore dismissed as moot. Additionally, the court determined that oral argument on the motions for summary judgment was unnecessary. For the reasons that follow, the motions are granted, and the complaint is dismissed.

# FACTS[1]

On February 23, 2006, plaintiff pleaded guilty to a violation of New York State Penal Law § 260.10-1, endangering the welfare of a child, a Class A misdemeanor, in the Amherst Town Court, Amherst, New York (Item 50, Exh. G).  On June 8, 2006, he was sentenced to a three-year term of probation by the Hon. Mark Farrell.  *Id.,* Exh. H. The Order of Probation provides that, "[a]t the direction of the Probation Officer," defendant was to "attend, actively participate and remain in sex offender treatment and comply with all the rules and regulations of the program."  *Id.*  Additionally, plaintiff was required to "[s]ubmit to any program of psychological or physiological assessment at the direction of the Probation Officer. . .," including polygraph testing.  *Id.*  The conditions of probation were slightly modified in court on August 10, 2006 to allow plaintiff to have contact with family members under the age of seventeen with adult supervision.  *Id.*  The Order of Probation indicates that plaintiff was still required to be evaluated for sex offender treatment.  *Id.*  At the time, Judge Farrell stated that plaintiff must "undergo an assessment by a licensed treatment provider, and if they require treatment . . . then he has to go to treatment."  (Item 68, Exh. A. 18).

Plaintiff was referred for evaluation for sex offender treatment at Horizon Health Services.  Dr. Hak J. Ko found no major mental health issues and no consistent pattern of sex offense, but found that plaintiff "could benefit from [the] educational phase of sex offense treatment in view of his admission of exercising poor judgment."  (Item 68, Exh. B). Plaintiff refused treatment and was discharged from the program (Item 57, Exh. D).  As a

---

[1]  The factual summary is taken from the parties' statements of material fact pursuant to Local Rule 56.1 (Items 50, Exh. F; 57; 68) and the exhibits thereto.

result of his refusal to participate, plaintiff was charged with a violation of probation (Item 50, Exh. I).

At a hearing on May 10, 2007, Judge Farrell found that plaintiff was in violation of the terms of probation for his refusal to participate in the treatment program at Horizon and ordered him to appear the next day for treatment (Item 50, Exh. J, pp. 7-8). At that time, the Assistant District attorney conveyed a request of defendant Jones and asked if Judge Farrell would order an assessment by defendant Heffler. *Id.,* p. 9. Judge Farrell ordered "that we start from square one," that plaintiff submit to an evaluation by defendant Heffler, and that plaintiff's treatment would consist of "whatever is deemed appropriate" following the evaluation (Item 50, Exh. J, p. 10).

Plaintiff attended approximately six sessions with defendant Heffler, from May 11, 2007 until June 26, 2007 Item 50, Exh. K). He commenced this action on June 27, 2007 (Item 1). At that time, defendant Heffler ceased his assessment of plaintiff due to the conflict of interest (Item 50, Exh. L).

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining

4

whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Summary judgment cannot be entered " 'if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 508 (S.D.N.Y. 2003). The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

## 2. Quasi-Judicial Immunity

Defendants contend that they are immune from the plaintiff's claims under the doctrine of quasi-judicial immunity, which is a form of absolute immunity that applies to non-judicial officers when they perform judicial functions. In order to qualify, "[t]he proponent of a claim of absolute immunity bears the burden of establishing the justification of such immunity . . . ." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 432 (1993). To determine whether a defendant is entitled to quasi-judicial immunity, the court must take a "functional approach" and examine the conduct at issue. *Cleavinger v. Saxner*, 474 U.S.

193, 201-02 (1985); *King v. Simpson,* 189 F.3d 284, 287-88 (2d Cir. 1999); *Saint-Guillen v. United States,* 657 F. Supp. 2d 376, 381 (E.D.N.Y. 2009).

The Second Circuit has identified two situations in which this immunity applies. First, the immunity shields conduct that is functionally comparable to that of a judge. Therefore, a "parole board official is absolutely immune from liability for damages when he decide[s] to grant, deny, or revoke parole, because this task is functionally comparable to that of a judge." *Scotto v. Almenas*, 143 F.3d 105, 111 (2d Cir. 1998) (citations and internal quotation marks omitted, modification in original). Second, the immunity also applies to tasks that are "integrally related" to judicial proceedings. *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (citing *Scotto*, 143 F.3d, 111-12). In deciding whether an actor is entitled to absolute immunity on the basis that his role is analogous to that of a judge, the court must evaluate the challenged proceedings in light of the "characteristics of the judicial process" set forth in *Butz v. Economou*, 438 U.S. 478 (1978). These factors include:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. at 202 (citing *Butz*, 438 U.S. at 512); *see also DiBlasio v. Novello,* 344 F.3d 292, 297-98 (2d Cir. 2003), *cert. denied*, 541 U.S. 988 (2004).

Defendant Heffler is entitled to absolute quasi-judicial immunity. He was appointed by the court to conduct an evaluation of plaintiff and to provide whatever treatment was indicated. Absolute immunity has been extended to court-appointed social workers, doctors, psychiatrists, and evaluators who conduct activities which are "inexorably

connected with the execution of [court] procedures and are analogous to judicial action."
*Scotto,* 143 F.3d at 111, quoting *Cleavinger*, 474 U.S. at 200. In *McKnight v. Middleton,* 2010 WL 1221431, *15 (E.D.N.Y. March 29, 2010), court-appointed forensic evaluators and social workers were granted absolute quasi-judicial immunity for their actions in interviewing and consulting the parties in a Family Court proceeding and preparing a report to the court. The court found that the evaluators "did not initiate the child custody proceedings but were drawn in the dispute by the appointment of the Family Court. Thus, they functioned 'more like witnesses or assistants to the court than advocates.'" *Id.* (quoting *Hughes v. Long,* 242 F.3d 121, 126 (3d Cir. 2001)). Similarly, in *Hunter v. Clark,* 2005 WL 1130488 (W.D.N.Y. May 5, 2005), the court found that court-appointed psychiatrists, who examined the plaintiff and submitted reports to the court regarding the plaintiff's competency to stand trial in a criminal proceeding, were entitled to absolute immunity. Here, defendant Heffler was appointed by the court to evaluate plaintiff for sex offender treatment, and to provide the appropriate treatment. Defendant Heffler is entitled to absolute immunity from suit, and the complaint against him is dismissed in its entirety.[2]

In the case of defendant Jones, the court finds that his supervision of plaintiff's probation is not "integrally related" to the judicial process. Under the "integrally related" test, "[t]he more distant a function is from the judicial process, the less likely judicial immunity will attach." *Scotto,* 143 F.3d at 111 (citations and internal quotation marks

_____

[2] Even accepting plaintiff's argument that the defendants "agreed among themselves to dispense with standard evaluation, assessment and diagnostic tools in order to, in effect, pre-determine that Plaintiff was or is a sex offender requiring treatment for the purpose of depriving Plaintiff of liberty and property (the cost of a prolonged string of treatment sessions)" (Item 58, p. 7), such allegations of malice or bad faith do not overcome absolute quasi-judicial immunity. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).

omitted, modification in original).  Thus, the Second Circuit has granted quasi-judicial immunity to probation officers for preparing pre-sentence reports because, in preparing such reports, "a federal probation officer acts as an arm of the court and that task is an integral part of one of the most critical phases of the judicial process." *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987).  In contrast, the Second Circuit found that a state parole officer's actions in preparing a parole violation report and in recommending that an arrest warrant issue were not entitled to absolute immunity because the conduct was "not performed under judicial direction and occurred before the initiation of parole revocation proceedings." *Scotto*, 143 F.3d at 112 (citations omitted).  Likewise, in *Saint-Guillen,* the court denied absolute immunity for a probation officer's failure to adequately supervise a parolee.  *Saint-Guillen,* 657 F. Supp. 2d at 382 ("[S]upervisory conduct is investigatory in nature, and, therefore, comparable to the role of a police officer rather than that of a judge or prosecutor.").

Here, defendant Jones  was not acting as an "arm of the court" and his actions were not performed under judicial direction.  His supervisory conduct, in supervising plaintiff's sex offender evaluation with defendant Heffler, was investigatory in nature, and was intended to determine what, if any treatment, was indicated.  Accordingly, defendant Jones is not entitled to absolute quasi-judicial immunity for his supervision of plaintiff's probation.

### 3.  Qualified Immunity

Although he does not enjoy absolute quasi–judicial immunity for his supervision of plaintiff's probation, defendant Jones enjoys qualified immunity.  The doctrine of qualified

8

immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity analysis involves two-steps: first, the court must determine whether the facts alleged make out a violation of a constitutional right. If the plaintiff establishes a constitutional violation, the court must then determine whether the conduct alleged violated "clearly established" statutory or constitutional rights of which a reasonable person would have known. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). Additionally, "[t]he qualified immunity test is an objective one." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). It looks to the circumstances confronting an official, not to the official's "subjective intent." *See Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

A recent case from the Eastern District of New York is instructive. In *Rose v. Goldman,* 2009 WL 4891810 (E.D.N.Y. December 9, 2010), the plaintiff was sentenced to probation based on a guilty plea to a nonsexual offense. The terms of plaintiff's probation did not require sex offender counseling, but he was directed by his probation officer to undergo sex offender therapy. Plaintiff only attended one forty-five minute session, and his subsequent failure to attend counseling as directed resulted in the filing of a charge of violation of probation. Even assuming that the probation officer violated plaintiff's constitutional rights by directing him to undergo sex offender counseling, the court found

9

that this right was not clearly established as the Second Circuit has not addressed the issue, while the district courts have split. *Id.,* at *6-7 (citing *Vega v. Lantz*, 2008 WL 3992651, at *14 (D.Conn. August 25, 2008) ("[b]eing classified in prison as a sex offender not only invokes a constitutionally protected liberty interest but it causes a 'stigma-plus'"), and *Tinsley v. Goord*, 2006 WL 2707324, at *5 (S.D.N.Y. September 20, 2006) (prisoner's classification as a sex offender did not implicate a constitutionally protected liberty interest)).

Here, plaintiff was directed to undergo sex offender evaluation, and Dr. Ko found that plaintiff "could benefit from the educational phase of the sex offense treatment in view of his admission of exercising poor judgment" (Item 68, Exh. B). Plaintiff refused to comply, and the court ordered that he be reevaluated, this time by defendant Heffler, and to undergo whatever treatment was indicated by the evaluation. To the extent that defendant Jones directed that plaintiff undergo sex offender evaluation by defendant Heffler, such an evaluation was objectively reasonable and did not violate a clearly established constitutional right. Moreover, plaintiff's allegations of bad faith do not reintroduce into the qualified immunity analysis an inquiry into the defendants' subjective intent. *See Norton v. Town of Islip,* 2010 WL 2070550, *4 (2d Cir. May 25, 2010) (quoting *Anderson,* 483 U.S. at 641). Accordingly, defendant Jones enjoys qualified immunity from plaintiff's section 1983 claim.[3]

---

[3] Defendant Heffler would also enjoy qualified immunity under this analysis as his evaluation was objectively reasonable under the circumstances and did not violate a clearly-established constitutional right.

## 4. HIPAA

Plaintiff concedes that HIPAA does not create a private cause of action and that his HIPAA cause of action against both defendants should be dismissed.

## CONCLUSION

Plaintiff's motion to compel (Item 41) is dismissed as moot. Defendant Heffler's motion for summary judgment is granted. The motion for summary judgment of defendant Jones is likewise granted, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment for defendants.

So ordered.

_____\s\ John T. Curtin__
JOHN T. CURTIN
United States District Judge

Dated: July 12 , 2010
p:\opinions\07-487.jul707

11